Our next case is 241380 Frazier v. Prince Georges County. Ms. Cookshank, please don't rush, but we'll hear from you whenever you're ready. Ms. Cookshank, please don't rush, but we'll hear from you whenever you're ready. Happy to hear from you, Counsel. Thank you. May it please the Court, Elizabeth Cookshank, on behalf of Plaintiff's Appellants, I'd like to reserve four minutes for rebuttal. This lawsuit is about a class of presumptively innocent people who are being detained pending trial under an unconstitutional system. But this appeal ultimately turns on a handful of straightforward immunity doctrines, which the District Court significantly misapplied. The County is categorically ineligible for quasi-judicial immunity from any of Plaintiff's claims. The Supreme Court and this Court have repeatedly reaffirmed that counties are ineligible for absolute immunities under any circumstances. And every Court of Appeals to reach the question, now seven Courts of Appeal in total, have applied that prohibition to quasi-judicial immunity in particular. Neither the District Court nor the County has identified a single case to the contrary, nor are we aware of any. That alone requires reinstatement of all Plaintiff's claims against the County. As for the judge defendants, Plaintiffs only ever sought declaratory relief against them. The judge defendants do not even attempt to defend the District Court's conclusion that judicial immunity precluded declaratory relief against the judges. Instead, they rely on a forfeited and unavailable abstention doctrine on which the District Court did not base its decision. For these reasons, we ask that the Court reinstate all of Plaintiff's claims against both sets of defendants and grant the further relief requested in their brief. Can we start with the judge defendants? And sort of, at least for my questioning, you can accept as a hypothetical that the District Court got it wrong. But can you help me understand how the judge defendants are adverse here? The Supreme Court in Whole Women's Health recently addressed using judges as defendants to challenge statutes. And the Supreme Court plainly said that when judges are acting in their adjudicative capacity, right, so when they're setting bail, for example, that suing them for injunctive or declaratory relief is outside of Article 3 because they're not adverse, right? Adversity is one of those requirements that Article 3 sets forward. And it can be complicated in lots of ways, but it seems after Whole Women's Health it's not complicated with respect to judges who are engaged in adjudicative work. And I understand the District Court didn't address this argument, but it's jurisdictional, so that doesn't help me any. And I know this is a little bit of a spring on you because the parties haven't argued Whole Women's Health, but do you have thoughts about that? Or do you have any sort of places that you think I should look to understand how a judge exercising its adjudicative capacity is adverse to your clients? So the Whole Women's Health question in particular is about judicial enforcement of statutes, and that's not what we're challenging here. We're not challenging sort of how the court is applying a statute. We are specifically challenging the particular conduct of the judges. And so in that sense, I think judges are in the same situation as any government official who is committing an unconstitutional act directly against the plaintiff parties. But is doing so by adjudicating a claim, right? So before the court, right, there's the defense, and then there's the government, and they're making an argument to the court about release or bail. Or conditions or no conditions, all of the same arguments we hear about in bail. And the judge is true, is acting in an adjudicatory fashion. It's saying, I've heard the arguments, I've looked at the evidence, I have decided X, right? That strikes me as like precisely the adjudication function of the court. And I take Whole Women's Health to just categorically say that in that context, you can't bring a declaratory injunctive relief against the judge, him or herself. I don't read Whole Women's Health as going that far. I think it was about the specific statutory enforcement scheme at issue in that case. I would also say that plaintiff's claim is not challenging the actual adjudication of any particular bail determination. We are not saying the judge got it wrong in any particular case or that any of our plaintiffs ought to have been released by a judge when they were not. We are not seeking sort of immediate release. What we are saying is what the judges are doing is improperly delegating their adjudicatory function to a nonjudicial entity. But why isn't the remedy for that to appeal? Another way to describe what you just said is that you think that trial judges are sometimes, often, most often, getting a question of law wrong. Traditionally, the remedy if you think a trial judge has gotten a question of law wrong is that you appeal that decision. You don't file a lawsuit in federal court attacking collaterally essentially a series of decisions made by state court judges. So this isn't a collateral attack on the decision itself. It's an attack on the system of declining to adjudicate and instead referring the adjudicatory decision to the county from a practical perspective? You frame it that way, right? But when I look at the orders, the orders say the defendant is committed without bail. That's an adjudication. That's a ruling by the court. It then goes on to say what they call the option. But whatever that is, I don't see how that's not an adjudication. We're not challenging the held without bond piece. We're not challenging the adjudication itself. We are challenging the wholesale delegation to the county subsequent to whatever has gone on in the proceeding. And to the question about, to Judge Hyten's question about appeals, as a sort of jurisdictional matter, 1983 doesn't require exhaustion of any particular state processes, which I think is sort of the appellate question as a factual matter. Appeals are not available to our clients in these cases because... They are. They're just not available as an appeal. They're available under habeas, right? You do it under mail-in rule 15-302. You can challenge it. It's not called an appeal, but it's effectively an appeal. But again, we are not seeking immediate release or the shortening of detention, which is sort of what habeas is getting at. We are challenging a process that exists outside these actual adjudications. Isn't that exactly what they were doing in Whole Women's Health, right? They weren't challenging any given decision. In fact, there hadn't been decisions yet, right? But they're just trying to tell the state court judge, you've got to do X. We declare that this is the way you must resolve the claim that comes to you. And the Supreme Court pretty clearly says, can't do that, right? If the state court gets it wrong, you can appeal, right? And so if the state courts are getting it wrong here, I mean, I'm extremely sympathetic as a factual matter to the situation you find yourself in. I don't understand why you didn't file 30 habeas claims here and get state courts to address your problems. But I can't figure out how I'm supposed to tell the state court judge by declaration or injunction how it's supposed to act. Because they're not adverse to you. They're just trying to decide cases. You think they're doing it wrong. Not fine. Maybe. I don't know. They are adverse to our clients in the sense that... Why? Why? Why are they adverse in a way that they were not adverse in Whole Women's Health? Well, just as a general matter, they are adverse in the sense that they are government actors who are subjecting our clients to an unconstitutional scheme through these improper referrals to the county. And so that would be every state judge, any state judge who makes any decision that you think is improper, is subject to being enjoined and declared to be acting unlawfully? No. Because, again, we are not challenging the bottom line adjudication in any particular bail review hearing. We are challenging the overall scheme of deferring decision-making altogether to the county, which is categorically different from a judge making a decision that we disagree with. These questions sort of sound in Rooker-Feldman, Rooker-Feldman being about state court losers running to federal court and trying to overturn adverse decisions against them. We are not trying to overturn adverse decisions. We are trying to get the judges to decide the law as they are supposed to. Decide differently, right? So instead of deciding to suggest that somebody has to be a custodian, you want them to decide it differently. I totally get that you want them to decide it differently. But why are they adverse to you in the way that Whole Women's Health talks about it? They are just deciding cases, right? They get the bail to them, they look at it, they decide it, and part of their decision, as the statute permits, is to require a custodian. A custodian is the county, they send it to the county. I guess I just totally can't figure out what your argument is as to why they are adverse as judges. We don't believe that the judges are looking at a statute and saying, I think the statute entitles me to just send this to a custodian in the sense of issuing a pretrial detention order subject to custody. We think the judges are wholesale handing over their adjudicatory authority to a different body, which is categorically different from a case in which a judge renders a judgment. I think that's a decision that we don't like. Again, I do want to mention the appeal question. As a practical matter, appeals are not available to our clients in these cases. Do you think 15302 doesn't permit you to bring a habeas challenge to a bail determination? I think we could, but I don't think 1983 requires it. That's different. You just said an appeal is not available. What I'm saying is, it's not called an appeal, but it's effectively an appeal. That's what habeas is. I think that that would be true of any challenge to an unconstitutional pretrial detention scheme, that in theory you could proceed through other state court mechanisms, but you're not required to. And the Supreme Court has repeatedly blessed and recognized lawsuits in the context of unconstitutional pretrial detention schemes. Can I take you to the motion to quash? Is there any way for us to rule for you on that without creating a circuit split? Is there a way that we could say that you can get discovery that would not put us in direct conflict with Russell v. Jones? I don't think that this court has to engage with, I believe, the state sovereign immunity questions that were at issue in Russell v. Jones. I think the court at this point, if it wanted to, could simply vacate the grant of the motion to quash as premature, because that's ultimately what we were saying, is these privileged questions need to be decided on a question-by-question basis in the context of actual decisions in a deposition or in live testimony, and can't be done in a blanket way. I frankly don't think that state sovereign immunity bears on the judicial deliberative process privilege. I guess I'll just say, does it not at a high level of generality seem extremely atypical that what we're going to do is we're going to have a deposition and we're going to ask judges, please describe the process by which you describe cases? That seems very odd and atypical, right? We are not, again, specifically asking... I know you don't want to say, I'm not asking you how you decided Bob Smith's fail, but you do want to ask them, describe the process by which you make these decisions. You do want to ask them that, right? We do want to ask them about their general... We do want to point to cases in our brief in which judges have been made to sit for depositions and in which judicial staff have been made to sit for depositions under various circumstances. There are a number of challenges to not exactly this system, but to other pretrial detention-like systems in which judges have been made to sit for depositions to kind of understand the general policies and practices that are going on. I'd point to the Feltz case, the McNeil case in New Orleans, the Cain case, and the Inree Certain Complaints case in the 11th Circuit where judges and their staff have been made to sit for depositions. I agree that it's not something that happens every day in federal litigation, but it's not unprecedented. I do also want to get back to the circuit split question. I don't read Russell v. Jones as being consistent with Inree Certain Complaints. I think there may already be a festering circuit split as to the susceptibility of judges and their staff to sit for depositions that this court might have to wade into in any event. Can I ask a question about the county? Can you describe in as much detail as you can for me what the policy, custom, pattern, or practice is? What have you alleged that the county is doing distinct from what the judges are doing or have done? If I accept as a hypothetical that the judges were gone and I was just looking at the county, what is the policy, custom, practice that satisfies Monell? The county has never challenged that there is a policy that we are... I understand. I'm asking you what it is. They may not challenge it, but I'm asking you what have you alleged it to be? This is pages 32 to 35 of our complaint. Basically what we are saying is that when the county receives a pretrial referral, it throws that person's folder in a pile, essentially, and defers weeks, if not months, before deciding whether, in its independent view, that person is eligible for release into the county. And so what that analysis looks like is the county has come up with a set of criteria, both the levels criteria, the levels on which someone can be released and how much supervision there is going to be needed, as well as a specific criteria that it has devised as to whether it thinks someone should be released at all. And those include the factors that judges are meant to consider, like the severity of the offense, prior criminal history, whether the person has an address, a verifiable address in Prince George's County, but also factors... So in addition to factors that the judge already considered, also factors like whether the accuser, whether the complaining witness consents to release into the community. Totally understand that. So I take what you're saying there is that there are two things that you're alleging are unconstitutional. One is a delay, right, that they have a policy of delay. And the second is that they are exercising independent judgment, and you've given the things that they're considering. But I take what you're saying is that it's that independent, sort of unconstrained discretion. Are those the two parts of the policy that you're, like, complaining about? Because I totally get the first one, by the way. Bracket delay for a minute. But the independent judgment is doing what the court has ordered it to do. Determine whether you think this person should be released. That might have been a bad decision by the judge, I totally get. But why aren't they just doing what the judge told them to do in that second part? I want to clarify. Are we talking about quasi-judicial immunity, or are we talking about sort of a merits question of whether they're doing what the... Well, so I'm talking about adverseness, but I'm asking a more specific question that informs my view of adverseness with respect to the county. So what I'm asking is sort of slightly more specific. It's sort of like a factual question as to what the nature of your claim is. Because you might imagine that the nature of your claim will affect at least my view on whether such a claim falls within our jurisdiction. So the judges are not ordering the county to do pretty much anything that it is doing, in the sense of the court has not set, nor is the court apparently aware of the criteria by which the county makes these decisions? It just gives broad discretion, right? The judge says, county, you've got broad discretion. Release him if you want him. Effectively, right? I totally get why that's a problem from your perspective. I understand it, right? But the question is, like, that just tells the county, release him if you want him. And so if that's what they're doing, why isn't that just pursuant to the judge's order? So first of all, they are not following anything that is set out in the four corners of the judge's order. They are doing their own discretionary analysis that the judges are not overseeing. This is all happening in a black box with no adversary proceeding or any of the other procedural safeguards that we look for. But also, even if they were just following orders, there's ample precedent that state actors or government actors cannot evade their constitutional obligations by saying they were simply following the orders of a court. That's the McNeil case from the Sixth Circuit. That's Moore v. Urquhart from the Ninth Circuit. Just following orders is not actually a defense for acting unconstitutionally. I do see that I'm quite low on time, if I can reserve the remainder for rebuttal. Thank you. Good morning, panel, if it please the Court. My name is Andrew Murray. I represent Prince George's County, Maryland. Judges, in Prince George's County, Maryland, the county, through its Department of Corrections, at its initiative and at its expense, has opted to provide a pretrial release program in support of its local criminal justice system. It exists for the purpose of supporting the local criminal justice system. In this particular case, the plaintiffs have alleged violation of their due process rights because they claim that the courts, the judges, have abdicated their constitutionally mandated duty to afford plaintiffs, those criminally accused, due process rights in bail and bond review hearings and instead abdicate that responsibility in favor of the executive branch, those employees at the County Department of Corrections who man its pretrial release unit. Now, concededly, the Court resolved this claim, these cases, on a 12B6 and a 12C motion. I realize you're the messenger here. I'm sorry? I said I realize you're the messenger here, but one thing that's sort of frustrating is it felt like we remanded this case with instructions to figure out what's actually... I just remember the previous appeal, it was in this building, and one of the things that happened at oral argument is everyone's like, okay, we're going to do this. And the previous argument, the parties were just diametrically opposed about what the judges were actually doing. And at least as I understood our remand order, it was, please make some findings about what the judges are actually doing. And now I'm confronted with a ruling on a motion to dismiss. What am I supposed to do with that? Well, I think the Court made those findings, Your Honor. You can't make findings on a motion to dismiss. That's what a motion to dismiss is. The Court looked at the allegations as pled, it looked at the operation of the Maryland Rules of Criminal Procedure, and found that the plaintiffs had not plausibly alleged a cause of action in this case. Well, wait, that's not what the Court said. What the Court said was, with all respect, a, shall we say, aggressive out-of-the-box theory about why a county can have immunity despite literally decades of precedents saying counties have no immunities of any kind. So that is a little strange, right? Your Honor, I would concede that there's ample authority suggesting that... The District Court also dismissed people who'd already been released, despite very clear authority from the Supreme Court and this Court that said, if you file a putative class action, the fact that you later get released does not moot your claim, right? Yes, Your Honor. So I'm back to, I don't really know what to do with all of this. Well, Your Honor, look, I think it's relatively, frankly, simple to resolve, because there have been no allegations that anything the county has done is in violation of any court order. There are no habeas petitions before the court. There are no contempt findings against the county. Governments constantly violate the Constitution without violating court orders, right? Lots of things violate the Constitution that aren't compelled by court orders. Your Honor, respectfully, and I made this argument in the brief, the county has opted to provide this pretrial release service voluntarily. Now we're back at the bitter with the sweet. Just saying we didn't have to do this so we can do anything we want is also something that, in the due process context, we rejected decades ago, I think. Well, what do you take the policy to be for the county, right? I take your colleague on the other side to say that the policy... Because Monell tells us that we've got to have a policy, right? I understand you haven't challenged the Monell piece yet, but we've got to understand what the nature of the claim is to evaluate things like our jurisdiction. I understand there to be sort of two parts to it, but I want to get your take on it. There's like a delay piece, which is sort of distinct from this sort of exercise of unfettered discretion. Can you help me understand what you think the alleged Monell policy is? I understand you probably think that it doesn't work, but just help me in understanding what the alleged policy is. Well, I understood it as the court did when it previously questioned appellant's counsel about it. It's the delay and the criteria utilized by the pretrial release personnel with essentially utilizing their own discretion and without the oversight of the court. So imagine for a second that we had a case where the judges did exactly what the judges do and the county instituted a policy that said in the exercise of our unfettered discretion we are only going to release people of a certain race. Do you think that they could bring a claim on that basis and say they've adopted a policy that is considering race as part of their discretionary judgment? The court plainly gave them. The court said you can exercise your discretion. But if the county, and I'm in no way suggesting the county has done this, this is obviously a hypothetical. If the county is sad, we are only going to release black people. That's it. No white people, no Hispanic, no Asian, nothing. Just black people. That's the only people that we will supervise. Don't you think that that would be a claim that could be brought because they've adopted a clear policy that is clearly unconstitutional and the fact that the judge told them they had discretion doesn't seem to solve that problem? I would agree with the court that that presents big constitutional due process problems. How about another, we won't release anybody who doesn't post a $100,000 bond, no exceptions, don't care how poor you are? Those are decisions for the court to make. No, no, the court says, as I understand Judge Richardson's question to be, the court says the county is authorized to release this person on such terms as the county thinks is appropriate. So when the county imposes that policy, it's not violating anything the judge told them. The judge said release under criteria that you think are appropriate and then the criteria that are announced are flagrantly and obviously unconstitutional. It seems pretty obvious to me that would be a county policy and you could sue the county, right? I would agree with that. So why is that different than this? Why doesn't that take the plaintiff's account of what's happening and if the plaintiff's account is true, why doesn't that sound like a policy and maybe a policy for which the county is responsible? Because the argument is, no one is saying, I guess another way to describe this question is, do you disagree that as a descriptive matter, some of the people that the plaintiffs would like to have be released? The county could release without violating the terms of any judge's order. So one of the allegations I think in the complaint is sometimes we don't let people out because they don't have an address in the county. But the judge's order doesn't say you can't release people who don't have an address in the county. Ergo, if the reason they're not being released is because they don't have an address in the county, it's because the county, not the court, has decided not to release people who don't have an address in the county, right? Right. But the county has to have some parameters within which it can make these decisions. Totally fair, but that's a merits question, right? What you're saying is that the criteria they're using are legitimate. They're not using race. They're not using wealth. They're not using age. They're not using something that's illicit. In fact, they're using totally reasonable things. You might be right on the merits. I wouldn't bet on it, but you might be. But that's a merits question, right? We don't have that question, right? It's a totally different inquiry if we're asking whether that is actually a violation of the Constitution or not. We're at the threshold step, right? Do you get to have discussions about the merits? Not at the 12B6 or the 12C. But in the record before the court, there are those criteria and the court can look at them and see that there's nothing violative of due process about them. The county can't possibly be expected You get that we don't typically do that, right? We don't typically get a case that was dismissed on immunity grounds contrary to decades of law and then turn around and decide on the merits that there's no due process violation, right? I mean, that's just not how we typically do things. Understood, Judge. Just jumping back to the judges, do you have anything you want to add about the judges and whole women's health? I don't, Your Honor, and I'll leave that to my colleagues from the state to argue. Thank you. Good morning. May it please the Court. There were a lot of questions a moment ago with regard to the county about whether this is proper for, or dismissal was proper on a 12C motion to dismiss on the pleadings. While it may not be, while the court's asking a lot of questions as to the county, and there may be questions as to whether that was proper, there should be no questions whether that was proper as to the judge defendants. Please allow me to explain. Just to make sure I understand, do you mean proper in the sense of the district court judge got it right in applying judicial immunity for prospective relief, or do you mean the district court reached the right place by dismissing the judges, even if it followed the wrong path to get there? Are you defending the actual path of the district court here, or are you just defending where the district court ended up? Both, Your Honor. Alright. So tell me why judicial immunity applies to prospective relief. During the last oral argument here before this court, relating to that exact question, the plaintiff's counsel was asked, why doesn't judicial immunity bar plaintiff's claim for declaratory relief? And the response to that exact question was simply a reference to Section 1983. And then the statute was cited. Then in response, the courts were familiar with the statute and asked for cases. The cases were cursory reference to Pulliam, Timmerman, and other cases that went unidentified. Since that time, and in the plaintiff's briefing, and not once has there been a case throughout the argument here, throughout the briefing, where the plaintiff's counsel has identified a single case from this court that said judicial immunity does not apply to prospective declaratory relief. The reason is, it doesn't exist. That case doesn't exist out of this court, speaking to whether judicial immunity will apply to prospective declaratory relief. Give me the cases you want us to look at that say the opposite, that say what you think is right, which is that judicial immunity bars declaratory and injunctive relief. Thank you, Your Honor. There are cases out of the 1st, 3rd, and 6th circuits, as well as the 5th and the D.C. circuits, that talk about, generally speaking, they don't look, as the plaintiffs want you to do, to look specifically at the statutory language of 1983, and come to the conclusion that judicial immunity does not apply. Rather, these cases look at, and consider the fact that the 1996 amendments to the Federal Courts Improvement Act, and they come to the conclusion that you can't get declaratory relief against judges, and it's because they're committing judicial acts. And those cases say that you can never get declaratory relief against judges, based on the amendment to 1983? Generally speaking, yes. And that would be the Guzman case, out of the 1st circuit, 2019, Allen, out of the 3rd circuit, 2017, Cooper, out of the 6th circuit, Bower v. Texas, out of the 5th, and Roth v. King, out of the D.C. circuit. And generally speaking, they come to the conclusion that, as a result of, even despite the 1996 amendments to the Federal Courts Improvement Act, you do not follow the plain language reading that the plaintiffs would have this court apply to this novel case of whether judicial immunity, this case, the first time this court has been presented with, would judicial immunity apply to prospective declaratory relief here? Those cases, we would implore the court to apply that analysis of those cases. Which is, you agree, is contrary to the plain language of the statute? I don't agree it's necessarily to the plain language. I thought that's what you just said. They rejected the plain reading of the statute, and instead said, despite what the statute says, we're going to do it anyway. What I meant is rejecting the plaintiff's argument that you apply a plain language reading of the statute. Because when you read the plain language of the statute, it's not very good for you, right? I would say it's not very clear, Your Honor. Based upon plaintiff's contention of how the plain reading should apply, it would not be. Can you at least talk for a minute, if you would like to, about whole women's health, and at least address the theory that even if the district court got off of the path here, it ended up in the right place, because judges are not adverse to those that appear before them? Absolutely. And before specifically I answer that question, in reference to a similar question to plaintiff's counsel, they made the point that there was not a statute here that was allegedly violated. I think that was generally the language used in the argument. But this is a rule. All this case comes down to is the state court judges applying the Maryland rule that allows them to refer these detainees, these criminal defendants, to pretrial. And it says that you'll only be released if they agree to supervise you. The rule allows it. In answer to your question... Is that what I think is 216.1.D.2.K.? This is committing the defendant to the supervision of an organization that agrees to supervise? Yes, Your Honor. That's the rule or statutory basis for the order that's being entered? Yes, Your Honor. And in reference to whether the judges are adverse here to criminal defendants, absolutely not. There's no difference between these criminal defendants, these nine who filed this action, and every other litigant that appears before these judges. If somehow the plaintiffs could allege that they're adverse based upon the circumstances of this case, it opens the door and kind of circles back to the judicial immunity argument. It opens the door, and this is what I think the district court, though may not as eloquently as they could have, described as this is the threat to every state court system. Can you help me understand? If an individual plaintiff here wanted to challenge their bond decision, can they do so by 15302, the habeas statute under Maryland law? Absolutely. And they could also ask for the Supreme Court of Maryland to issue a writ of mandamus. But more importantly, in every one of these cases, Your Honor, every request to come back to the trial court for a bond review hearing was heard. They've never been denied. So at any time— Well, but you might think that getting to go back before the same judge isn't quite the same thing as an appeal, right? Well, no, Your Honor. That's not necessarily the same judge. The record reflects here there are different judges. The same level judge, right? There are different judges. I get after the first one is the lower, but the reconsideration is all by the same level, no? No. No, not exactly, Your Honor, because these cases can move from district court, which is the lowest level trial court at the state of Maryland. And I see my time is up. You can answer. Thank you. But some of these cases then move up, as in Mr. Butler's case, for example, who was convicted for second degree murder, pled guilty. It moves from district court, the case there. The case moves from district court to circuit court. They see a whole other level of judges at that point. So it's baked into the process here. You refer to it as appeal, habeas corpus. However, the court wants to frame it. But nonetheless, and it happened in these cases, they can keep coming back. Even after this alleged delay by the county, they can keep coming back to the same judge, a different judge of the same court. Or if the case ends up at the circuit court level due to the higher level criminal charges, it can be heard by a completely different judge at a different court. Thank you. Thank you, counsel. Thank you. Happy to hear from you and reply. Thank you, Your Honor. I have a number of responses to make. I'll try to go quickly. I'll start with declaratory relief against the judges. And as an initial matter, defendants didn't cite any of those cases that they contend, say, prospective relief is unavailable against judges. At least one of the cases we did cite in our own brief for the proposition that absolute judicial immunity does not bar claims for prospective relief. Supreme Court precedent is clear. Pulliam v. Allen, Morales v. Waco, common law judicial immunity does not bar declaratory relief against a judge. To the extent that the court thinks that the district court erred in its analysis dismissing declaratory relief, the proper course is to send it back. That's the Von Rosenberg case, rather than to sort of redo that analysis in the first instance. But you agree that's not true if we think we lack jurisdiction. We don't get to just send it back to redo judicial immunity if we lack jurisdiction. We've got to determine jurisdiction first and foremost. If you're speaking to the whole women's health question, which I'm happy to submit a supplemental brief on if that would be helpful to the court, I don't actually think that that state sovereign immunity question is itself jurisdictional. I think that the judges could raise it but have not. You think adversity is not jurisdictional? I don't think adversity is not jurisdictional. I think the state sovereign immunity question, which I took to be slightly different, is not. In terms of adversity, this goes to Ex parte Young. Adversity in the context of challenging the action of a state actor looks to whether there is, quote, some connection between the actor and the conduct being challenged. And here what we are saying is that the judges have a policy, not that the judges are adjudicating particular cases in a way that is problematic necessarily, but that there is an overall policy that we are trying to challenge. And there are numerous cases where plaintiffs have been able to challenge judges when they were enacting an illegal or unconstitutional policy separate from their individual adjudications. And I'll just quickly touch on the county, if I may. And the policy, just so I understand, the policy is to commit defendants to the custody or supervision of an organization that agrees to supervise the defendant. That's the policy that they've adopted. The policy that they've adopted is altogether deferring decisions as to whether someone should be released into the community, which both the Constitution and the Maryland rules commit to judges, to a different body. Can I ask a slightly different question? I'll let you get your points out. Don't worry. So oftentimes what happens in these scenarios, or at least in some settings, I don't know, Prince George's County, is that the judge says that I will release you if your mama agrees to be your custodian. Yes. Right? And so that seems like the same sort of context, right? I'm releasing you as long as your mama agrees to supervise you or somebody else, right? Mama is the most common one. In your view, is that an unconstitutional delegation to mama? Because mama could say it's totally in her discretion to decide whether she wants to supervise her son or not. And in some instances she doesn't feel comfortable with that, and we don't know what considerations she takes in. She's not the actor. But from the court's perspective, the judge's perspective, is your view that that common practice is subject to the same challenge that you're making here? Not at all for several reasons. And I will note that we're getting deep into the merits questions here. Yeah, I know, but it helps me understand.  What you are describing happens in court before a judge, and this is part of an ongoing decision that the judge is ultimately making. Often the mama would be in court or they would call her. But not always, right? Often the question is, if mama agrees, you can be released. I think as a general matter, the judge is able to make that determination sort of in the moment, or immediately thereafter. And then ultimately what will happen is the custodian will come back to the judge, the parties will come back to the judge and say, this is what happened. So I take your position is that it would be unconstitutional for the judge to do that, to issue an order that says, if mama agrees to supervise you, then you can be released. But absent that agreement, you can't. That condition, right, given to pretrial, you think that's unconstitutional because that's a delegation of judicial authority to mama? Not necessarily. I thought that's what you just said, that unless you go back to the judge, that it's an unconstitutional delegation? I think what happens, and again, we're deep into sort of complex merits questions, but ultimately what needs to happen is the judge needs to be the final decision maker. And often what will happen is the judge will say, you know, I'm going to authorize you released subject to supervision by your relative or whoever it is. And that person can sort of thumbs up or thumbs down. If there's a thumbs down, you're immediately back before the same judge to consider whether there are further conditions that might satisfy public safety. Your view is that that's required? The thumb up and thumb down has to be before the judge, and the judge has to be the one to say, okay, I see your thumb up, so I'm going to release you. The judge can't tell somebody that? The judge needs to be the final decision maker and can't wholesale delegate the analysis that he is constitutionally required and by rule required to a third party. So, yes, ultimately we take issue with the delegation. It's just the same, and I want to clarify that the presumption is in favor of release. The burden is on the government to prove that there is no condition or combination of conditions that would satisfy the government's interest. So as a general matter, when we are seeing a situation which the presumption is in favor of release, judges are trying to figure out whether there is some condition or combination of conditions that would satisfy those interests. And so in practical terms, it is almost never the case that there is a single potential custodian or supervisor who could be responsible, but ultimately the judge does need to make that determination. If I may just turn to the county. Monell isn't jurisdictional. The county has never challenged it. The county has never challenged the existence of a policy. In fact, it has an official operating manual and policy. So there is definitely a policy that we are challenging for purposes of stating a claim. And just as a factual matter, since the question of appeals came up and my friend on the other side said that the plaintiffs have always been entitled to further review, that's not actually the case, particularly while the county's process is ongoing. Many judges in Prince George's County have an official policy requiring motions for new bail hearings showing changed circumstances and will not accept delays on the county's part as a justification for changed circumstances. And that's a bar on a 15-302 habeas action? It's not a bar on habeas. We were talking about appeals specifically. So for the reasons stated, we ask that the court reverse the erroneous district court decision so that we can proceed to these important merits questions. Thank you. Thank you, counsel. We'll come down and greet counsel and then we will proceed to our third case of the day.
judges: Julius N. Richardson, Toby J. Heytens, Henry F. Floyd